### AMERICAN EXPRESS CO. v. O'CONNOR.

(Court of Appeals of District of Columbia. Submitted March 8, 1922. Decided April 3, 1922.)

#### No. 3686.

Master and servant ⊚⟹301(4)—Transfer company's driver held servant of express company directing him.

Evidence that the truck driver, whose negligence caused the death of plaintiff's intestate, was in the general employ of a transfer company, but that for a month before the accident the truck, with the driver, had been rented to an express company, which had placed its sign on the truck and gave the driver his instructions with reference to his work, *held* to sustain a finding that at the time of the accident the driver was the servant of the express company within the rule that a general servant may, with respect to particular work, be transferred with his own consent or acquiescence to the service of a third person, so that he becomes the servant of that person, with all the legal consequences of the new relation.

Appeal from the Supreme Court of the District of Columbia.

Action by Katie M. O'Connor, administratrix of the estate of Maurice E. O'Connor, deceased, against the American Express Company and another. Judgment for plaintiff against the named defendant, and that defendant appeals. Affirmed.

Walter B. Howe and Samuel E. Swayze, both of Washington, D. C., for appellant.

F. E. Mitchell and H. W. Wheatley, both of Washington, D. C., for appellee.

SMYTH, Chief Justice. Appellee, as plaintiff, instituted action against the American Express Company and the Washington Motor Transfer Company, both corporations, to recover damages suffered by her through the death of her husband, which she averred was produced by the negligence of an employé of the defendants in the operation of a truck. The jury returned a verdict against the Express Company and in favor of the Transfer Company. From a judgment on the verdict the Express Company appeals.

While appellee's husband was engaged in placing a tire on his automobile, which stood near the curb on Massachusetts avenue, Washington, a motor truck, moving at a high rate of speed, struck him, causing the injuries from which he died. It is admitted that the driver of the truck was negligent. The chief question in the case is as to whose servant he was. According to the verdict of the jury, he was the servant of the Express Company; but the company declares there is not sufficient evidence to support the finding.

The truck belonged to the Transfer Company, and Brown, its driver, was employed by that company; but, at the time of the accident, he was engaged, with the truck, in delivering goods for the Express Company, under an arrangement made on behalf of the Transfer Company by its treasurer, Anderson. According to Anderson:

"That 'arrangement was that he would send them a truck, and they would take that truck and do the work, and pay him for the hours the truck was in use."

Asked if there was any arrangement between the companies as to who should control the driver, he answered: "I should say not." At the time of the accident, Brown, with the truck, had been engaged in the service of the Express Company continuously for more than a month. On the truck, besides Brown, was a man by the name of Gray, and another person, who had "an express company's tag on his hat." The truck was loaded by the American Express Company's employés. Sheets indicating the names of the consignees of the goods which Brown was to deliver and the amount to be paid by each consignee were placed in Brown's hands by the Express Company's employés. He delivered the goods and collected from the consignees, turning over the cash to the Express Company at the end of each trip. The truck was left during the night at the Express Company's depot.

Lowe, the Transfer Company's foreman, according to Gray, "had not a thing in the world to do with the trucks from the time they got a load on them at the American Express Company until the time they delivered the goods. Brown got his directions as to the manner of the operation of that truck, and where to go, and what to do, from the American Express Company." Gray also said that hanging on the outside of the wagon was the sign "American Express Company," which was placed there by directions of the Express Company.

Brown said he believed he was working for the American Express Company, and added that he received instructions from the company's people; that Anderson would come down to the Express Company's platform, "but never superintended his work. Lowe came there every day to the platforms; did not take his orders from Lowe."

Summarizing the foregoing testimony, we are satisfied that it justifies the conclusions that the arrangement between Anderson and the Express Company was that the latter company was to "take the truck and do the work and pay him" for it; that there was no understanding about who should control the driver; that neither Lowe, the foreman, nor Anderson, the treasurer (but who seems to have been also the manager), gave the driver any instructions while he was working for the Express Company; that he got his directions as to the manner of operating the truck from the Express Company; that he not only delivered packages, but collected expressage, and accounted to the Express Company for the money; that the driver was thus engaged by the Express Company continuously for more than a month, and that that company had caused its sign to be placed on the truck; that the company assumed control of the driver, and exercised that control with the acquiescence of the driver and the Transfer Company, and that its control was as authoritative as if given in express words by the Transfer Company.

We cannot doubt that the jury was fully warranted in drawing the inference that, at the time of the negligent act, the Express Company was Brown's master. True, he was in the general service of the Transfer Company; but, with respect to the work which he was doing on that day, he as in the service of the Express Company.

Both parties rely on the decision of the Supreme Court of the United States in Standard Oil Co. v. Anderson, 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480, but we think it supports the contention of appellee. In the course of its opinion the court said:

"One may be in the general service of another, and nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation." 212 U. S. 220, 29 Sup. Ct. 253, 53 L. Ed. 480.

Again:

"It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do his work, and places them under his exclusive control in the performance of it, those men became pro hac vice the servants of him to whom they are furnished." 212 U. S. 221, 29 Sup. Ct. 254, 53 L. Ed. 480.

Where a bridge company owned a railroad track, but had no locomotives, it rented one from a railroad company for so much per day, and paid the wages of the engineer and fireman, who were subject to the orders of the superintendent of the bridge company. In other words, the bridge company rented the crew, along with the engine, from the railway company. The Circuit Court of Appeals for the Sixth Circuit, speaking through Judge Taft, said:

"They were, it is true, general servants of the railway company; but at the time of the accident they were engaged in the work of the bridge company, were subject to the orders of the bridge company's officers, and in what they did or failed to do were acting for the bridge company." Byrne v. Kansas City, Ft. S. & M. R. Co. et al., 61 Fed. 605, 607, 9 C. C. A. 666, 24 L. R. A. 693.

Judge Lurton, in Powell v. Construction Company, 88 Tenn. 692, 702, 13 S. W. 691, 694 (17 Am. St. Rep. 925), quoted with approval this language of Chief Justice Cockburn:

"When one person lends his servant to another for a particular employment, the servant for anything done in that particular employment must be dealt with as the servant of the man to whom he was lent, although he remains the general servant of the person who lent him."

The Court of Appeals of New York was called upon to consider a case where a corporation, engaged in the lumber business, made arrangement with one Durr, the owner of teams, by which a team was to draw lumber for the corporation. The latter made no payments to the driver of the team, and could not discharge him, but might send him back to Durr if his services were not satisfactory. An accident happened through the negligence of the driver. The lower court held that the driver was not the agent of the corporation, but the Court of Appeals reversed the decision, saying:

"The principles of law which control in this class of cases are quite well settled. A servant in the general employment of one person, who is temporarily loaned to another person to do the latter's work, becomes, for the time be ng, the servant of the borrower, who is liable for his negligence. * * * In the case under consideration, Durr, the truckman, did not stand in the re ation of an independent contractor to the defendant. He did not undertake to deliver lumber for the defendant. He simply furnished a team and driver to enable the defendant to do its own work." Hartell v. Simonson & Son Co., 213 N. Y. 345, 349, 350, 113 N. E. 255, 256.

So here the Transfer Company simply furnished a truck and driver to enable the Express Company to deliver its packages, or at least there is evidence sufficient to support such a finding.

The following cases bear upon the same point: Badertscher v. Independent Ice Co., 55 Utah, 100, 184 Pac. 181; Terry Dairy Co. v. Parker, 144 Ark. 401, 223 S. W. 6; Scribner's Case, 231 Mass. 132, 120 N. E. 350, 3 A. L. R. 1178; Philadelphia & R. C. & I. Co. v. Barrie, 179 Fed. 50, 102 C. C. A. 618.

We find nothing in George A. Fuller Co. v. McCloskey, 35 App. D. C 595, or in the opinion of the Supreme Court (228 U. S. 194, 201, 33 Sup. Ct. 471, 57 L. Ed. 795) in the same case on appeal, which differs from the views we have expressed. It was conceded in that case that there was no conflict in the evidence upon the facts relating to the servant's employment; hence the question for the court was one of law. But, as we have pointed out, it is quite different here. Nor does the decision in Sonnemann v. Philadelphia, B. & W. R. Co., 35 App. D. C. 279, or in Newbold v. Harmon, 26 Wash. Law Rep. 808, decide anything which supports appellant's contention. In the first case the lower court instructed the jury to return a verdict in favor of the railroad company, on the ground that it was not the employer of the persons who so negligently handled a derrick that the plaintiff was injured. This court reversed the ruling and granted a new trial, saying:

"The essential fact, it seems to us, is that the defendant, 'for reasons satisfactory to it,' undertook to do the hoisting itself, with men and machinery maintained for the express purpose of co-operating with shippers in the speedy loading of its cars."

In the Newbold Case the court ruled that the evidence had no tendency to prove that the relation of master and servant existed between the defendant and the driver of the vehicle which caused the injury complained of. Here the jury found on sufficient evidence that the negligent employé was the servant of the Express Company.

As to the other cases cited by appellant, either the facts are different from those in the case before us, or the cases announce a rule that is not in harmony with the decision in the Standard Oil Case, supra; hence they are not in point.

Other errors are assigned, but they are without merit. We agree with the statement in appellant's brief that the main point for decision is whether or not Brown was the servant—agent—of the Express Company at the time the negligent act was committed. That point having been resolved by the jury upon ample evidence in favor of the appellee, the judgment must be, and it is, affirmed, with costs.

Affirmed.